IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| THABICO COMPANY<br>   *Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 2:16-CV-00427 |
| KIEWIT OFFSHORE SERVICES, LTD,<br>CMF LEASING CO., and B.R. CRANE<br>& EQUIPMENT LLC,<br>   *Defendants* | §<br>§<br>§<br>§<br>§ | |

### DECLARATION OF MICHAEL A. LEE

1.  My name is Michael A. Lee. I am an attorney licensed to practice in the state and federal courts of Texas and in the Fifth Circuit Court of Appeals. I have practiced law in the Southern District of Texas since my admission more than 26 years ago. Over that time I have litigated cases in the Southern District of Texas on behalf of thousands of individual clients on both sides of the docket. I have never been the subject of a motion for sanctions. I have never filed a motion for sanctions in the Southern District against a colleague. These statements in this Declaration are based on my personal knowledge and are true and correct.

2.  **Origination**

3.  An attorney in Houston Texas who was familiar with my work from another case contacted me around mid June 2015 regarding a lawsuit on behalf of Triumph Wood Product Inc. After approximately a week of meetings regarding background facts related to the potential case, I presented the client with a copy of my standard hourly fee agreement, which they carefully reviewed and later signed. Exhibit 1 attached to this Declaration, is a true and correct copy of my initial hourly fee agreement with Triumph. Exhibit 2 is a true and correct copy of the initial hourly fee agreement with Thabico after it requested joining the state court action, dated

1

September 22, 2015. Exhibit 6 is a true and correct copy of the contingency fee agreement with Thabico dated June 14, 2016 that expressly authorized Counsel to nonsuit the state court lawsuit and refile Thabico's case in Nueces County.

4. I have previously represented many foreign clients in US litigation matters and am familiar with the challenges. For instance it is important to write things down for later review in light of the language barrier.

5. An attorney should also establish special procedures to keep such clients informed of the status of the case, strategy desired by the client, issues that arise concerning the goals established by the client, and dozens of other matters that arise without notice during litigation. From the outset of my review of Triumph's case, I was aware that it might become necessary to add Thabico as plaintiff. For that reason, I included Thabico in all of my early communications with Triumph, according to Thabico and Triumph's request. Exhibit 3 attached to this Declaration, is a true and correct copy of just such a written memo to the client setting forth the precise actions taken by Counsel meet their goals and directives.

6. It is also vitally important for foreign clients to set up clear lines of communication with designated US representatives. Before agreeing to represent Thabico in this matter I insisted that Thabico appoint US representatives who could bind the company. Exhibit 4 and 5 attached to this Declaration are true and correct copies of Thabico's appointment of US representatives able  decisions on behalf of Thabico, and communicate status back to the home office.

7. In every agreement signed by both Triumph and Thabico the clients agreed that: Counsel made no guarantees as to the outcome, Counsel had various rights to withdraw from any

further representation of clients, clients would reimburse Counsel for any sanctions awarded against Counsel based on something clients authorized or directed be done on its behalf, and finally, that clients agreed to submit all disputes between Counsel and clients related to performance of the agreement, to binding arbitration, and would not seek monetary damages from Counsel via the judicial system.

8. **Refusal to appeal**.

9. Thabico became very upset with the events in State court, soon after it joined the lawsuit. The state court struck two minor claims made by Triumph, and shortly thereafter dissolved the injunction which was the only "security" Thabico had to get the return of its funds held by Thabico. After many attempts to put those rulings in context, and convince the client that the heart of its claims remained, Counsel nevertheless advised Thabico that Kiewit intended to follow-up with its threatened summary judgment against Thabico. After further extensive discussions with Counsel regarding the magnitude of that threat, Thabico demanded to know what its alternatives might be. Thabico also failed to pay substantial outstanding fees due pursuant its initial hourly agreement.

10. Representative Kim Chi for Thabico contacted Counsel in the Summer of 2016 with the supposed final word from Thabico that it could no longer pay hourly, or pay all the outstanding fees owed, but wanted to consider other options, including a new contingency fee agreement with Thabico. I initially declined and informed Ms. Nguyen to advise Thabico that I would be withdrawing from its representation and they should seek substitute counsel. Very soon thereafter Thabico agreed to pay, and did pay one of my outstanding bills. I felt terrible for Thabico and sincerely wanted to help Thabico and not leave it without hope. I was also happy

3

with the sacrifice Thabico made pay one of my outstanding bills, so I agreed to "look into Thabico's possible alternatives.  As we began discussing possibilities I initially proposed methods to streamline the case, go through the summary judgment process with Thabico and hope to persuade the judge that, as owner of the funds, Thabico, unlike Triumph had valid claims for the two causes of action she had dismissed against Triumph.  I also explained that Thabico, and Triumph for that matter, still possessed the vast majority of their causes of action, that I hope would make it to a jury for determination.  After I finished that explanation, I distinctly recall one or two of Thabico's representatives immediately asking, what would happen if I were wrong about Judge Palmer and she did dismiss the claims on summary judgment.  I responded, we could appeal her decision and hopefully show the court of appeals that Thabico still had valuable claims.  Almost in unison at least three of the Thabico representatives asked, "how long would that take?"  I responded, "two years more or less."  Before I could say another word the entire Thabico group responded with what sounded like weeping and moaning "no, no, no Mr. Lee we cannot wait that long.  "You must find another way."  Then I distinctly recall Kim Chi Nguyen all alone say, "what about a contingency fee case, you talked about that as a possibility later when we originally retained your services.  I was non-committal, and truly had no desire to convert the lawsuit, but I was touched by their misery, much of which I shared myself.  Nevertheless we agreed to follow-up and talk a few days later.  I promised to speak to attorneys I know and respect for advice and get back to them.

11.   **Decision to NonSuit and Refile**

12.   Based on my prior experience I was very familiar with removal battles involving defendants who remove cases from state court to federal court in order to gain a strategic advantage.  I also recall in one of my first discussions with Mr. Fryar about this case, we spoke

4

about the client's refusal to appeal. I told him I estimated two years give or take, which he agreed was a reasonable guess. I mentioned that these were foreign plaintiffs. He pointed out that they had an absolute right to file their claims in federal court according to federal jurisdictional statutes and long established case law. I called another well-respected litigator and friend who was very familiar with Nueces County named Mikal Watts. He and I tried a case against Ford years ago, and I had not been in Nueces County courts in too long so I asked him his general opinion about filing the case where it happened. I wanted to know whether there might be bad feelings against Vietnamese based on disputes with Vietnamese shrimpers information I had heard about.

13. After those conversations, and perhaps others I performed substantial legal research on many issues, including especially the possible impact of Res Judicata or Collateral Estoppel on Thabico's claims, whether abstention might be a problem, non suit rules, forum non conveniens, and much more. When I reported back to Thabico, and generally mentioned what I learned they became very excited and wanted to know when it would happen. I told them I needed to do more research and they needed to work out my back fees that were still outstanding. I told them if we were able to confirm the legal strategy and they were able to reach come up with an acceptable fee proposal, I would agree to do what they wanted. I also hedged by telling them I would need a partner to assist on the case if that was the direction we went, and would arrange for someone else to join the team. Later as I answered several of my questions I warned Thabico that this would be considered controversial by some, even though the research showed the law permitted the move. I also told him there was no way of telling how Kiewit might respond Kiewit had already made threats to seek sanctions against Thabico in state court but never followed through.

14. One last relevant point regarding Thabico's decision to move the case, Thabico's fee proposal made no sense to me.  I mistakenly believed they were offering to pay all my hourly time in the case but only if we one.  I quickly told them I was not interested and we nearly parted company. In fact, I misunderstood the contingent fee they proposed.  The group called back later that day and explained that Thabico had offered to pay a contingency fee of 100% of all recovery after first collecting the amount of funds stolen from Thabico.  I told them I would not feel comfortable accepting such a fee, and agreed to a 30% fee and the other terms set forth in Ex. 6.

15. I declare under penalty of perjury that the foregoing is true.

/s/ Michael Lee_____
Michael A. Lee